IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Harline Jefferson,          )<br>                              )<br>          Plaintiff,      )<br>                              )<br>     vs.                        )<br>                              )<br> Bojangles Restaraunts, Inc., )<br>                              )<br>          Defendant.     )<br>                              ) | C/A No.: 3:11-1783-JFA-SVH<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Harline Jefferson ("Plaintiff") filed this employment action against Bojangles Restaraunts, Inc. ("Defendant" or "Bojangles") on July 22, 2011, asserting a claim for age discrimination pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"). This matter comes before the court on Defendant's motion for summary judgment filed July 23, 2012. [Entry #18]. Plaintiff filed a response on August 9, 2012 [Entry #20], and Defendant filed a reply on August 20, 2012 [Entry #21].

All pretrial proceedings in this case were referred to the undersigned on January 1, 2012, pursuant to the provisions 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends that Defendant's motion for summary judgment be granted.

I.     Factual Background

In August 1989, Plaintiff began working as an hourly crew member at the Bojangles restaurant located at 1038 Broad Street in Sumter, South Carolina as an hourly crew member. [Entry #18-2 at 9–10]. By 2001, Plaintiff had been promoted to Assistant Unit Director ("AUD"), and her duties included training and scheduling employees, making sure customers were satisfied and making sure the safe was "in order." *Id.* at 16–17. She had the authority to hire, fire, and discipline non-managerial employees. *Id.* During most of her employment at Bojangles, Plaintiff reported directly to Wanda Finley, Unit Director ("UD"). [Entry #18-8 at ¶ 5]. In September 2008, Finley transferred to a different location and Bojangles asked Plaintiff, who was 48 at the time, to take Finley's position as the UD at the Broad Street Restaurant. *Id.*; *see also* Entry #18-2 at 59–60. Plaintiff declined, and Bojangles hired Tyia McAllister. *Id.*

During her annual performance review on June 6, 2009, Plaintiff received an overall performance rating of 2.22 out of 3 from McAllister and a 3% merit raise. [Entry #18-2 at 77]. On February 8, 2010, Naomi Coffee (age 57) replaced McAllister as UD at the Broad Street Restaurant and Coffee became Plaintiff's supervisor. [Entry #18-8 at ¶¶ 6, 9]. Because Plaintiff had worked at the Broad Street Restaurant for 20 years and Coffee was new, Coffee relied on her help with scheduling and the operations of the restaurant. [Entry #18-7 at 6–7].

Between February 17, 2010 and June 28, 2010, Plaintiff received four work incident reports. On February 17, 2010, Plaintiff received a written warning for (1) failing to communicate, (2) not following cash handling policies because she failed to count the

2

safe at the beginning of the shift, and (3) for storing outdated chicken. [Entry #18-2 at 19–20]. Coffee noted on the Work Incident Report, "Harline has worked at this store for 20+ years. She has been an AUD for many years and should know procedures." *Id*. Plaintiff was aware of the cash handling procedures and admitted that she did not count the safe at the beginning of her shift. *Id*.

On March 31, 2010, Plaintiff was disciplined because Bojangles received a low Steritech[1] score during an audit, which fell under her responsibilities. *Id*. at 20–21. More specifically, Plaintiff was counseled for (1) not performing manager walks, (2) not checking food temperatures, and (3) failing to report equipment failures to the UD. *Id*. On May 2, 2010, Coffee gave a verbal warning to all of the Broad Street store managers—Plaintiff, Edna Jennings (age 41), Sandra Williams (age 44), and Vivian Jefferson (age 21)—for failing to maintain food costs. *Id*. at 25–26.

A week later, on May 9, 2010, Coffee gave Plaintiff her annual performance appraisal for the period of June 14, 2009 through June 14, 2010. While Plaintiff continued to meet Bojangles' standards, Coffee noted that she needed to make sure that the deposit logs were filled out on her shift each time. *Id*. at 71–75. Coffee also commented: "Harline has been with company (store) for many years. New policies and guidelines are hard for her—she does not like change. We have struggled with food cost and other policies." *Id*. Plaintiff was also given an opportunity to comment and she wrote: "Bojangles' has many growth and opportunity (sic). I have experience [] this first hand

---

[1] Steritech is a food safety audit that addresses every aspect of food safety in restaurants, from receiving to holding and food preparation.

and I enjoy the growth and opportunity that it has given me. I will continually do my best so that Bojangles' can and will be a great asset to many." *Id*.

On the night of December 22, 2010, Plaintiff was managing the closing shift. [Entry #18-2 at 30]. As part of the closing, Plaintiff was responsible for counting each register in the restaurant, adding the totals of the registers, then writing the amount of the deposit on a deposit log before putting the money in a deposit bag, and putting the deposit bag in the safe so it could be deposited the next morning. *Id*. Plaintiff took the drawers from the two front registers to the back of the restaurant to count them and discovered that the front register was over by $30. *Id*. Plaintiff did not know what to do with the extra $30 so she tried to contact Coffee, but was unable to reach her. *Id*. According to Plaintiff, while she was trying to figure out whether there was an error, the last employee told her he was leaving. *Id*. at 31. Plaintiff testified that she grabbed everything on the desk, including the $30, and walked out with the employee to avoid being left in the store alone. *Id*. She testified that she planned to return in the morning and discuss the matter with Coffee. *Id*. Plaintiff had already completed the deposit log. *Id*. at 32–33.

The next morning, December 23, 2010, Sandra Williams called Plaintiff at home around 6:45 or 7:00 a.m. and told her a customer had come into the restaurant that morning and said he had left his money. *Id*. at 36–37. Plaintiff told Williams something to the effect of "I'll be there" or "I'm on my way." *Id*. Plaintiff did not ask how much money the customer thought he had left or why the customer thought he had left money the day before. *Id*. at 37. Plaintiff arrived at the restaurant approximately 30 minutes later

4

and gave Williams the $30 to return to the customer. *Id*. at 38. Plaintiff and Williams did not have any discussions about the money. *Id*.

Williams contacted Coffee to let her know that a customer was missing money. [Entry #18-7 at 8–9]. Coffee told Williams that she would contact Plaintiff and look into the matter when she got to work. *Id*. By the time Coffee arrived at the Broad Street Restaurant, Area Director Charles Mitchell, who happened to be in town to perform an audit, had been made aware of the situation and was already investigating. *Id*. at 9. Mitchell directed Williams and Plaintiff to give written statements detailing what had happened. [Entry #18-2 at 40; Entry #18-9 at ¶ 6]. Mitchell also reviewed the deposit log and discovered that Plaintiff did not list the $30 overage as part of the deposit. [Entry #18-9 at ¶ 4].

After considering Williams' and Plaintiff's statements, Mitchell decided to terminate Plaintiff for violating Bojangles' cash handling policy. *Id*. at ¶ 7. Before terminating her, Mitchell consulted with Regional Vice President Jeff Wells (age 51), and Vice President of Human Resources Vickie Smith (age 52) about the decision, who both concurred that Plaintiff's conduct warranted termination. *Id*. at ¶ 8. Mitchell then met with Plaintiff on the afternoon of December 23, 2012, and informed her that she was terminated. *Id.*

After her termination, Plaintiff contacted Wells and Smith and asked them to reconsider her termination. [Entry #18-2 at 54, 55, 57]. Additionally, Plaintiff's daughter, Lakeisha Govan, also tried to get Bojangles to reconsider Plaintiff's termination. Govan called Coffee and asked if Coffee could get her mother's job back.

5

[Entry #18-7 at 13]. Plaintiff then got on the phone and apologized for her daughter getting Coffee involved and apologized for anything she had done to Coffee. *Id*. Govan also tried contacting Wells. [Entry #18-5 at 4, 7]. When Wells did not return her call, she contacted Bojangles and represented herself to be "Latrell Eaddy" and on subsequent occasions "Kimberly Green" and "Tara Green." *Id*. at 3, 11–12. On January 2, 2010, Govan sent a comment through Bojangles' website claiming to be Kimberly Green. *Id*. at 10–12. The comment she sent stated:

> My family and I are regular customers of Bojangles' have been for years. So been that we have come to know the workers quite well. On yesterday I was inform (sic) that a manager (Harline) was recently fired from Bojangles'. All the years I have been coming there she was the nicest and sweetest person I ever came across and for Bojangles' to let her go over something that simple is non sense (sic). Violation of company policy after 20+ years is crap. I feel like Bojangles' did that to a dedicated person of all those years, Now I wonder what they would do to there (sic) customers. Bojangles' has no concern about their employees or customers and it bothers me. Take it as it may I will recommend a boycott of Bojangles' because I feel it is only right. So from this moment on Bojangles' will not receive another penny from my family or friends, and anyone else I run across. Fair is Fair. Even the employees said she was dedicated and a hard worker. Is that how Bojangles' really feel (sic). Tell it to The Item or CNN.

*Id*. at 25. Govan listed her husband's cell phone number as contact information for "Kimberly Green" because Govan's cell phone number is in Plaintiff's name, and Govan did not want Bojangles to connect her with Plaintiff. *Id*. at 18.

Wells received the comment Govan submitted under the false name Kimberly Green and called the number asking to speak with Kimberly Green. [Entry #18-10 at ¶ 7]. Govan answered the phone and pretended to be Kimberly Green, and Wells did not know that he was actually speaking with Plaintiff's daughter. *Id*.; *see also* Entry # 18-5 at 19–

6

20. Green/Govan told Wells that Plaintiff was a nice and sweet lady, and Wells agreed. [Entry # 18-5 at 20]. During the conversation, Green/Govan represented that she was a regular Bojangles customer and that she would go to Bojangles, tell Plaintiff her problems, and seek Plaintiff's advice, although she now admits these were lies. *Id.* Wells told Green/Govan, that it was a business decision to terminate Plaintiff. *Id.* Green/Govan asked Wells to see if he could bring Plaintiff back to work. *Id.* According to Govan, Wells got tired of her saying that Plaintiff was a nice and sweet lady and told her "Well, that's just how it's going to be," and he was glad that she was a concerned customer, but "we just need a younger environment." *Id*. at 21. Govan claims the conversation ended and they both hung up the phone. *Id*. at 23.

II.     Discussion

    A.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non–movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . .

7

that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

B.    ADEA Framework

The ADEA makes it unlawful for an employer to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age. 29 U.S.C. § 623(a)(1). In an ADEA disparate treatment case, the plaintiff must prove that, "but for" her age, she would not have been subjected to an adverse employment action. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). As noted by the Supreme Court in *Gross*, "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act. . . ." *Id*. at 176.

A plaintiff can prove her employer's motive to discriminate based on age in one of two ways. First, the employee "may meet this burden under the ordinary standards of proof by direct and indirect evidence relevant to and sufficiently probative of the issue." *EEOC v. Clay Printing Co.*, 955 F.2d 936 (4th Cir. 1992). Alternatively, a plaintiff may resort to the judicially created burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and adapted to ADEA cases.[2] To establish

---

[2] The Supreme Court recently noted that it "has not definitively decided" whether the *McDonnell Douglas* framework, first developed in the context of Title VII cases, "is appropriate in the ADEA context." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175, n. 2 (2009). In the absence of further direction from the Supreme Court, the undersigned must follow Fourth Circuit precedent, which applies the *McDonnell Douglas* framework to ADEA claims. *See Hill v Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d

a prima facie case of discrimination under the ADEA, a plaintiff must show (1) she was a member of a protected class; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly-situated employees outside the protected class received more favorable treatment. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir.2004).

Pursuant to this framework, once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 1333, 142 (2000). If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was "'not its true reason[ ], but [was] a pretext for discrimination.'" *Merritt*, 601 F.3d at 294 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." *Merritt*, 601 F.3d at 294–95.

---

277, 285 (4th Cir. 2004); *see also Bodkin v. Town of Strasburg*, 2010 WL 2640461 at *4–5 (4th Cir. June 29, 2010) (continuing to apply the *McDonnell Douglas* framework following the *Gross* opinion).

C.   Analysis

  1.   Direct Evidence

Plaintiff argues that she can support her claim of age discrimination based on direct evidence with the following facts: (1) she was called "grandma" or "slow" by Bojangles' employees who were not decision-makers; and (2) Wells' alleged comment to Govan that Bojangles needed a younger environment. The burden of persuasion never shifts to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision. *Gross*, 557 U.S. at 178–179; *see also Slocum v. Potter*, No. 3:08-3714-CMC-JRM, 2011 WL 11612, *4 (D.S.C. 2011).

Plaintiff alleges that Sandra Williams, Marilyn Mack, and Tyia McAllister called her "grandma" and "too slow." [Entry #18-2 at 63, 89]. However, Defendant contends, and Plaintiff has not disputed, that these employees were not decision-makers regarding Plaintiff's employment. [Entry #18-1 at 15]. Additionally, although the facts show that Mitchell made the decision to terminate Plaintiff after concurring with Wells and Smith (Entry #18-9 at ¶¶ 7–8), Plaintiff does not allege that Mitchell, Wells, or Smith ever made age-related comments to her. *See Cramer v. Intelidata Techns. Corp.*, No. 97-2775, 1998 WL 911735, at *2 (4th Cir. 1998) ("In order for the alleged discriminatory statements to be probative of age discrimination, there must be a nexus between the statements . . . and the decision making process"). As such, Plaintiff has not shown the requisite nexus between these stray remarks and Plaintiff's termination. *See O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 548–49 (4th Cir. 1995) ("isolated and ambiguous

statements . . . 'are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.'"), *rev'd on other grounds*, 517 U.S. 308 (1996).

Additionally, Plaintiff proffers as direct evidence of age discrimination Govan's testimony that Wells told her in a phone conversation that Bojangles needed a younger environment. Wells denies having made this statement and Defendant argues that the court should consider the context of the statement having been made, in particular, noting the numerous lies surrounding the description of the conversation between Govan-pretending-to-be-Green/Eaddy. However, at this stage the court cannot make credibility determinations. Accepting the "younger environment" statement as true for purposes of summary judgment, such evidence is insufficient to show that Plaintiff was fired because of her age. It was Mitchell, and not Wells, who investigated the incident in which Plaintiff took a $30 cash overage home and failed to indicate the overage on the deposit log. The record reveals that, although he consulted with Wells and Smith, Mitchell made the decision that Plaintiff's violation of the cash-handling policy warranted termination after personally investigating the incident. [Entry #18-9 at ¶¶ 7–9].

Most importantly, Plaintiff's proffer of Wells' statement to Govan that Bojangles needed a younger environment is insufficient to prove that age was the "but for" cause of Plaintiff's termination in light of the uncontradicted evidence that (1) Plaintiff took home a $30 overage and did not report it on the deposit log on December 22, 2010; (2) Mitchell investigated the incident the next morning, determined the conduct warranted termination, and contacted Wells and Smith who agreed; and (3) Mitchell terminated Plaintiff that day, on December 23, 2010 after investigating the matter. While Govan's

11

testimony may be sufficient to present a jury question of whether age was a contributing or motivating factor for Plaintiff's termination, it is insufficient to provide a "but for" reason for her termination in light of the undisputed facts. Therefore, the undersigned recommends that the district judge find that Plaintiff cannot survive summary judgment based on the proffered direct evidence.

        2.        Indirect Evidence / *McDonnell Douglas* Analysis

It is undisputed that Plaintiff is a member of a protected class and suffered an adverse employment action when she was terminated. Plaintiff also alleges she was meeting her employer's reasonable expectations at the time she was terminated. Bojangles argues that although Plaintiff was meeting its standards as of the date of her last evaluation, May 9, 2010, the evaluation noted the importance of making sure deposit logs were completed on her shifts. However, Defendant also admits that Plaintiff was not disciplined after her evaluation on May 9, 2010. [Entry #21 at 8]. Therefore, because Plaintiff was meeting Bojangles' standards on May 9, 2010 and there is no evidence that she was disciplined thereafter, Plaintiff has shown she was meeting her employer's legitimate expectations for the purposes of showing a prima facie case.

Next Plaintiff claims that similarly-situated employees received more favorable treatment. First, Plaintiff alleges that the cashier who took the customer's $50 bill violated the cash policy by accepting the large bill, but was not terminated. Although the parties appear to agree that the overage was the result of a customer not receiving change after he paid with a $50 bill, neither party cites to any evidence in the record evidencing

12

this. Furthermore, the "cashier who accepted the $50 bill" is not sufficiently identified for the undersigned to analyze whether she was similarly-situated.[3]

Plaintiff also contends that McAllister is similarly-situated, but provides no other specifics. [Entry #20 at 8–9]. Defendant admits that McAllister violated a cash policy, but alleges that McAllister was not Defendant's employee at the time, as she was employed by a franchisee. [Entry #18-1 at 27]. Plaintiff has not disputed this fact. Therefore, there is no evidence that McAllister is a valid comparator.

Plaintiff also alleges that Sandra Williams (age 44)[4] was a similar-situated employee who was not terminated for violation of a cash policy. Specifically, Plaintiff claims, without providing any citation to the record, that Coffee documented multiple policy violations by Williams, including cash policy violations, as early as March 2010. [Entry #20 at 9]. In response, Defendant admits that Williams was disciplined for failing to verify the safe once, but argues that it was Williams' first cash policy violation. [Entry #18-7 at 14–15; #20-7 at 1–2]. Defendant also points out that Plaintiff was not terminated for her first cash policy violation on February 17, 2010. [Entry 18-2 at 68]. Williams was terminated later that month for failure to show up for shifts. [Entry #18-7 at 2–3].

---

[3]Although Plaintiff identified in her statement on December 23, 2010 that a cashier named Nicole operated the register that was over by $30, no further information regarding this cashier has been provided in the record. [Entry #18-2 at 76].

[4] Although Williams and Conyers are members of the protected class, Plaintiff contends they are nevertheless substantially younger and may therefore be compared to show disparate treatment. Without making a determination on what constitutes "substantially younger," the undersigned accepts Plaintiff's argument for the purposes of this motion.

13

Additionally, there is no evidence that Williams ever took money from a register home with her. Therefore, Williams is not a valid comparator.

Plaintiff's fourth alleged comparator is Sonia Conyers (age 41). Conyers was written up and suspended without pay when the safe in the restaurant she managed was $150 short over a period of two months and she failed to notify her Area Director of the shortage. [Entry #20-8 at 3–4]. Because the safe shortage could not be directly attributed to any particular employee, all management employees were disciplined, and Conyers, as the UD, was suspended. *Id*. at 4. However, as it was Conyers' first cash policy violation, she was not terminated. *Id*.[5] Plaintiff, on the other hand, had previously been disciplined for a cash policy violations. Additionally, there is no evidence that Conyers took an overage from a register home with her and failed to indicate the overage on the deposit log. Therefore, Conyers is not a valid comparator.

Plaintiff has failed to set forth a prima facie case because she has not shown that the alleged comparators were similarly-situated. Even if Plaintiff could show a prima facie case, Defendant has set forth a legitimate, non-discriminatory reason for her termination: that after previously being disciplined for violating a cash policy, she failed to report a $30 overage on a deposit log and instead took the overage home with her. Therefore, the burden shifts back to Plaintiff to show that Defendant's reason for terminating her was pretextual.

---

[5] The undersigned finds unpersuasive Plaintiff's argument that Conyers had multiple violations because the safe was short a $150 over a period of two months (as opposed to on one occasion). It appears the discipline was related to Conyers' failure to tell her Area Director of the consistent problem, not the failure of Conyers to tell her Area Director of each time the register was short.

14

Plaintiff relies on Govan's testimony that Wells told her Bojangles needed a younger environment to show pretext. However, as previously discussed, this testimony only shows, at most, that age was a factor in Defendant's decision to terminate Plaintiff, and Plaintiff must show that she would not have been terminated, but for her age. Because Plaintiff has not set forth any evidence showing that age was the "but for" reason, as opposed to a contributing or motivating factor, for the decision to terminate her, she has not set forth evidence of pretext and therefore cannot survive summary judgment.

III.    Conclusion

For the foregoing reasons, the undersigned recommends the district judge grant Defendant's motion for summary judgment [Entry #18] and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

January 3, 2013  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

15

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).