IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Harline Jefferson, | ) | C/A No.: 3:11-cv-1783-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Bojangle's Restaurants, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This employment litigation matter comes before the court on Plaintiff Harline Jefferson's Objections to the Report and Recommendation ("Report") issued by a Magistrate Judge in this case. The Magistrate Judge has recommended that this court grant Defendant Bojangle's Restaurants, Inc.'s Motion for Summary Judgment. In her Complaint, the Plaintiff has alleged violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq*. Having reviewed the entire record, including Plaintiff's objections, the court finds that the Magistrate Judge has fairly and accurately summarized the facts and has applied the correct principles of law in her Report. Accordingly, the court adopts the Report and fully incorporates it into this order.

**I.     Factual and Procedural History**

The court provides a brief summary of the facts of this case below, but the Magistrate Judge has provided a much more detailed summary in her Report.

The Plaintiff worked at the Defendant's restaurant in Sumter, South Carolina for twenty-one years. She began as an hourly crew member, but, at the time she was terminated, Plaintiff was working as the Assistant Unit Director ("AUD") of her restaurant. In the months prior to her termination, Plaintiff received written warnings and discipline for a variety of infractions,

1

including failing to communicate, not properly following cash handling policies, storing outdated chicken, not performing manager walks, not checking food temperatures, and failing to report equipment failures to the Unit Director ("UD").

On the night of December 22, 2010, Plaintiff, as part of her duties as AUD, counted the money in the cash registers before closing the restaurant and found that one of the registers was over by $30. According to Plaintiff, she tried to contact her UD, Naomi Coffee (age 57), to find out what to do with the $30 but was unable to reach her. Against company policy, Plaintiff took the $30 home with her and did not record the overage on the deposit log. The next day, the Area Director, Charles Mitchell (age 39) (who happened to be in town to perform an audit), became aware that Plaintiff took money home with her after a customer returned to the restaurant for the money. Mitchell investigated the matter and decided to terminate Plaintiff for violating Bojangles' cash handling policy.

After Mitchell terminated Plaintiff, she contacted Regional Vice President Jeff Wells (age 51) and Vice President of Human Resources Vickie Smith (age 52) and asked them to reconsider her termination. Plaintiff's daughter, Lakeisha Govan, also tried to get Bojangles to reconsider the termination, making numerous calls and leaving a comment through Defendant's website, using different pseudonyms. The website comment (which was posted by Govan using the name "Kimberly Green") prompted a call from Wells, who explained to Govan that the decision to terminate Plaintiff was a business decision. According to Govan, Wells got tired of her saying that Plaintiff was a nice and sweet lady and told her, "Well, that's just how it's going to be," and he was glad she was a concerned customer, but "we just need a younger environment."

Plaintiff filed this action on July 22, 2011 asserting a claim for age discrimination pursuant to the ADEA. On July 23, 2012, Defendant filed the instant summary judgment

2

motion, which Plaintiff subsequently opposed. The Magistrate Judge filed her Report on January 3, 2012, recommending that this court grant Defendant's motion. Plaintiff filed objections to the Report on January 25, 2012. Defendant filed its Reply to Plaintiff's Objections on February 7, 2012.

## II.     Legal Standard

### A.     The Magistrate Judge's Report and Recommendation

The Magistrate Judge made her review in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within fourteen days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the Report that have been specifically objected to, and the court is allowed to accept, reject, or modify the Report in whole or in part. *Id.*

### B.     Legal Standard for Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trustees of*

*Mayland Community College*, 955 F.2d 924, 928 (4th Cir. 1992).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

### C.     The ADEA Framework

The ADEA makes it unlawful for an employer to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age.  29 U.S.C. § 623(a)(1).  In an ADEA disparate treatment case, the plaintiff must prove that, "but for" her age, she would not have been subjected to an adverse employment action.  *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).  As noted by the Supreme Court in *Gross*, "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act . . . ." *Id.* at 176.

A plaintiff can prove her employer's motive to discriminate based on age in one of two ways.  First, the employee "may meet this burden under the ordinary standards of proof by direct and indirect evidence relevant to and sufficiently probative of the issue."  *EEOC v. Clay Printing Co.*, 955 F.2d 936 (4th Cir. 1992).  Alternatively, a plaintiff may resort to the judicially created burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and adapted to ADEA cases.[1]  To establish a prima facie case of discrimination under the ADEA, a plaintiff must show (1) she was a member of a protected class; (2) she was meeting her

---

[1] The Supreme Court recently noted that it "has not definitively decided" whether the *McDonnell Douglas* framework, first developed in the context of Title VII cases, "is appropriate in the ADEA context." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 n.2 (2009).  In the absence of further direction from the Supreme Court, this court must follow Fourth Circuit precedent, which applies the *McDonnell Douglas* framework to ADEA claims.  *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004); *see also Bodkin v. Town of Strasburg*, 2010 WL 2640461 at *4–5 (4th Cir. June 29, 2010) (continuing to apply the *McDonnell Douglas* framework following the *Gross* opinion).

employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly-situated employees outside the protected class received more favorable treatment. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004).

Pursuant to this framework, once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was "'not its true reason[], but [was] a pretext for discrimination.'" *Merritt*, 601 F.3d at 294 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." *Merritt*, 601 F.3d at 294–95.

**III.    Analysis**

Plaintiff objects to the following parts of the Magistrate Judge's Report: (1) the Magistrate Judge's use of the *McDonnell Douglas* framework as opposed to the standard recited in *Lightner v. City of Wilmington*, 545 F.3d 260 (4th Cir. 2008); (2) the Magistrate Judge's finding that statements constituting evidence of discrimination cannot be attributed to the decision-maker; (3) the Magistrate Judge's finding that the Plaintiff failed to set forth a prima facie case because she did not show that the alleged comparators were similarly situated; (4) the Magistrate Judge's finding that Plaintiff failed to show any evidence showing age was the "but

for" cause for termination, thus failing to demonstrate pretext.  The court addresses each of these objections separately below.

According to Plaintiff, the Magistrate Judge should have used the standard articulated in *Lightner* rather than the *McDonnell Douglas* framework in assessing Plaintiff's age discrimination claims.  However, Plaintiff fails to cite any authority to support her assertion.  Furthermore, the Fourth Circuit has applied the *McDonnell Douglas* framework to ADEA claims involving employee termination, and this court sees no reason to use a different standard.  *See, e.g.*, *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277 (4th Cir. 2004).

In her Report, the Magistrate Judge concluded that comments made by Plaintiff's coworkers calling her "grandma" and "too slow" were not direct evidence of age discrimination because they were not made by the decision-maker who terminated Plaintiff.  Plaintiff objects to that finding, but she fails to provide evidence otherwise.  The court agrees with the Magistrate Judge's conclusion as to those statements and is unpersuaded by Plaintiff's unsupported objection.  The Magistrate Judge also accepted as true the "younger environment" statement attributed to Wells by Plaintiff's daughter.  Nevertheless, because Mitchell, and not Wells, made the decision to terminate Plaintiff (and, according to the evidence, made that decision before he conferred with Wells), and because the uncontradicted evidence shows that Plaintiff was terminated after a cash policy violation where she took a $30 overage home, the Magistrate Judge concluded that Wells's statement was not the "but for" cause of Plaintiff's termination.  Plaintiff asserts that there is a question of fact as to whether Wells was the decision-maker, but the uncontradicted evidence shows that Mitchell made the decision to terminate Plaintiff based on the cash policy violation before he ever consulted with any other supervisors.  Moreover, even if Wells is considered to be a decision-maker in this case, the "younger environment"

statement that he allegedly made is merely evidence of a contributing or motivating factor for the termination. As articulated by the Magistrate Judge in her Report, the statement is insufficient to provide a "but for" reason for Plaintiff's termination in light of the undisputed facts.

Plaintiff disagrees with the Magistrate Judge's finding that she has not established a prima facie case because she has not shown that the alleged comparators were similarly situated. "[T]o be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Parker v. Magna Innertech-Spartanburg*, Civil Action No. 6:09-773-JMC-KFM, 2010 WL 5488599, at *7 (D.S.C. Nov. 29, 2010) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). In her Objections, Plaintiff identifies three employees who she thinks are similarly situated: (1) the cashier who took the customer's $50 bill; (2) Sandra Williams, who failed to verify the safe; and (3) Sonia Conyers, who was disciplined along with her entire store management team for their failure to report a $150 drawer shortage over a period of two months. In Plaintiff's view, "[r]egardless of the job title or the exact similarities between Plaintiff's policy violation and the other employee's violation, the employees are still under the same work conduct code and performance standards." (ECF No. 27, p. 5). Indeed, the Supreme Court has recognized that "precise equivalence in culpability between employees is not the ultimate question" and has directed courts to looks at the "comparable seriousness" of the other employees' acts. *McDonald v. Sante Fe*, 427 U.S. 273, 283 n.11 (1976) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). In this case, the court disagrees with Plaintiff that any of the cash policy violations of the proposed comparators are of comparable serious to

Plaintiff's violation—none of the proposed comparators were alleged to have taken money home as Plaintiff did.  Plaintiff did not offer enough information for either the Magistrate Judge or this court to determine that Plaintiff and the cashier were similarly situated.  Moreover, the court cannot find that accepting a $50 bill is of comparable seriousness to taking $30 home.  As to Williams and Conyers, their cash policy violations were first time infractions for both women.  In contrast, the cash policy violation by Plaintiff that led to her termination was not her first cash policy violation.  In fact, Plaintiff had been disciplined for failing to verify the safe in the past—a violation similar to Williams's cash policy violation—and Plaintiff also was not terminated for that violation.  The court agrees with the Magistrate Judge's findings regarding the proposed comparators.  They are not similarly situated.  Thus, Plaintiff has failed to set forth a prima facie case.

   Even if Plaintiff could show a prima facie case, Defendant has set forth a legitimate, non-discriminatory reason for her termination: that after previously being disciplined for violating a cash policy, she failed to report a $30 overage on a deposit log and instead took the overage home with her.  Plaintiff believes that she can show that the reason for terminating her was pretextual and submits "[t]hat failure to provide an explanation as to why Plaintiff was fired for a cash violation, when others had money missing for a period of two months, when a cashier violated cash policy in accepting the $50 bill . . . is proof of a pretext."  (ECF No. 27, p. 9).  The court has already addressed those cash policy violations above and has found that they are not of comparable seriousness to Plaintiff's cash policy violation.  The court also finds that the violations are insufficient to show pretext.  Plaintiff further alleges that "the pattern of discrimination that appears in not only the store where Plaintiff was employed but also another store under the same control of Mr. Wells" is evidence of pretext.  (ECF No. 27, p. 9).  Plaintiff

8

describes an incident at a Bojangles restaurant where "a register was short by about $1000, [but] the only consequence was that everyone was written up by Mike Cox, and no one was fired." *Id.* Plaintiff then compares that discipline to the termination of an employee at the same restaurant, Larry Wright, who was approximately 60 years old and was terminated for cash policy violations. Plaintiff asserts that this disparity in treatment evidences pretext. However, it appears that Plaintiff has misconstrued the facts, as it was a deposit of $1000 that was missing, rather than a register that was short of that amount. And, in that case, all of the employees were written up because the supervisors were unable to determine who was at fault for the missing money. Wright, on the other hand, admitted to his cash policy violation, as did Plaintiff in this case. Additionally, like Plaintiff, and unlike the employees who were written up for the missing deposit, Wright had multiple cash policy violations prior to his termination. In fact, Wright had been warned that if he had another cash policy violation, he would be terminated. After reviewing the record, the court disagrees that the examples cited by Plaintiff show pretext.

**IV.     Conclusion**

For all of the reasons discussed above, this court adopts the Magistrate Judge's Report. Accordingly, the court hereby grants Defendant's Motion for Summary Judgment. (ECF No. 18).

IT IS SO ORDERED.

March 11, 2013                                   Joseph F. Anderson, Jr.
Columbia, South Carolina                         United States District Judge

9